# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-2202V

| | |
|---|---|
| THERESA KELLY, | Chief Special Master Corcoran |
| Petitioner, | Filed: March 18, 2025 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Laura Levenberg*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Felicia Langel*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On November 22, 2021, Theresa Kelly filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received on September 18, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

The parties briefly negotiated (ECF Nos. 23, 24), but were unable to resolve the matter on their own, and have now fully briefed entitlement and damages (ECF Nos. 27, 29, 30). For the reasons set forth herein, I find that Petitioner is entitled to compensation, and award damages for actual pain and suffering in the amount of $55,000.00.

### I. Factual Evidence

#### A. Medical Records

On September 18, 2020, Petitioner received a flu vaccine in her left deltoid at a Walgreens pharmacy. Ex. 1 at 4.[3] Twenty days later (October 8, 2020), she called the office of her primary care physician ("PCP") complaining that after vaccination she could not move her shoulder, and the problem continued to persist. Ex. 3 at 32. The same day, she was seen by Dr. Jared Brinker in her PCP's office for left arm pain that started after her September 18th vaccination. *Id.* at 33. Petitioner complained of decreased range of motion ("ROM"), stiffness, and "very significant" pain. *Id.* On examination, her left shoulder ROM was "poor" and she had difficulty with abduction. *Id.* at 35. Dr. Brinker diagnosed Petitioner with "bursitis due to influenza vaccine" and provided anti-inflammatory medication. *Id.* at 36.

On October 28, 2020, Petitioner saw her PCP, Dr. Rebecca Raedeke, again complaining of left shoulder pain that started after vaccination on September 18th. Ex. 3 at 41. The medication she received at the prior visit helped, but had not resolved her pain. *Id.* Her left shoulder ROM was decreased and painful, with abduction limited to 90 degrees. *Id.* at 44. Dr. Raedeke agreed that Petitioner had likely subdeltoid or subacromial bursitis, probably from vaccination. *Id.* She ordered an MRI and referred Petitioner to an orthopedist for a possible steroid injection. *Id.*

The next day, Petitioner had a left shoulder MRI. Ex. 4 at 3. The MRI showed a deep partial tear of her supraspinatus tendon. *Id.*

On December 9, 2020, Petitioner saw orthopedist Dr. Jason Ramsey. Ex. 5 at 4. Petitioner complained of a two and a half-month history of left shoulder pain, tightness, weakness, and instability that started after her flu vaccination. *Id.* Her shoulder was sore "right after the injection," and three days later when she reached out with her left arm, she started having "throbbing pain in the shoulder radiating into the forearm." *Id.* Her pain was currently between five and six out of ten, but worsened to eight or nine at its peak. *Id.* Sleeping on her left side and moving her shoulder aggravated her pain, while applying heat and taking anti-inflammatory medication provided relief. *Id.*

---

[3] On the same date, Petitioner received a shingles vaccine in her right arm that is not at issue in this claim.

2

On examination, her left shoulder active ROM was 155 degrees in forward elevation, 85 degrees in abduction, and 65 degrees in external rotation, all with discomfort. Ex. 5 at 4. Dr. Ramsey reviewed the MRI images and noted that there was a small amount of bursal fluid and the bursa looked "inflamed," in addition to the partial rotator cuff tear noted on the MRI report. *Id.* Dr. Ramsey assessed Petitioner with left shoulder bursitis, capsulitis, and a low-grade partial thickness tear of the supraspinatus tendon. *Id.* He noted that she had "inflamed her bursa and has some limited motion suggesting some capsulitis in the left shoulder after the flu vaccination event." *Id.* at 5. He did not think the supraspinatus tear was causing much of her shoulder problem. *Id.* He administered a cortisone injection and recommended that Petitioner do home exercises. *Id.*

Petitioner returned to Dr. Ramsey the following month (January 6, 2021). Ex. 5 at 6. Petitioner reported "about 70% resolution of her discomfort" and improvement in her ROM. *Id.* She was doing her home exercises and felt she was making good progress. *Id.* On examination, her left shoulder ROM was 170 degrees in forward elevation, 90 degrees in abduction, and 65 degrees in external rotation. *Id.* Dr. Ramsey recommended that Petitioner continue home exercises and return in two months. *Id.*

Nearly four months later (April 28, 2021), Petitioner followed up with Dr. Ramsey. Ex. 5 at 7. She was feeling better, but still avoided reaching back and away from her body due to pain. *Id.* She continued to avoid sleeping on her left shoulder and picking up heavy objects at work. *Id.* On examination, her left shoulder ROM was now 180 degrees in forward elevation, "close to 90" degrees in abduction, and about 75 degrees in external rotation. *Id.* Dr. Ramsey advised Petitioner to transition from stretching to working on strengthening her shoulder. *Id.* He did not schedule any follow up, but told her she could come back if her symptoms worsened. *Id.* There are no further treatment records relating to Petitioner's left shoulder pain.

### B. Declarations

Petitioner filed two short declarations in support of her claim. Exs. 6, 9. She explains that her "slight delay" in reporting her shoulder pain was because she "always expect[s] some pain and swelling with a vaccine." Ex. 9 at ¶ 3. She is not "someone that complains about every little thing," and thought the pain would go away. *Id.* She had never heard of a shoulder injury from vaccination until this happened to her. *Id.* at ¶ 4. Initially, she returned to Walgreens (where she received the vaccine) seeking assistance, but when she realized that was not going to help, she called her PCP. *Id.* at ¶ 5.

### II. Factual Findings and Ruling on Entitlement

#### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate by preponderant evidence all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[4] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they "suffered the residual effects or complications of such illness, disability, injury,

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

or condition for more than 6 months after the administration of the vaccine . . . ." Section 11(c)(1)(D).

"[T]he fact that a Petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where Petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where Petitioner sought care for four months, followed by fifteen month gap); *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where Petitioner did not seek additional treatment after the five month mark.

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological

5

abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

### B. Parties' Arguments on Entitlement

Petitioner argues that the evidence supports a finding that the onset of her shoulder pain occurred within 48 hours of vaccination. Petitioner's Motion for a Ruling on the Record, filed Dec. 11, 2023, at *6 (ECF No. 27) ("Mot."). Petitioner first sought care 20 days after vaccination, stating that she could not move her shoulder and this problem had been present for 20 days – placing onset on the day of vaccination. *Id.* And she continuously and consistently related the onset of her pain to the flu vaccination to her PCP and orthopedist. *Id.* She cites *Williams v. Sec'y of Health & Human Servs.*, No. 17-1046V, 2020 WL 3579763, at *5 (Fed. Cl. Spec. Mstr. Apr. 1, 2020) for the proposition that notations characterizing onset as 'since,' 'after,' 'following,' are best understood as indicating that onset occurred within 48 hours of vaccination. *Id.*

Respondent counters that Petitioner's association of her shoulder pain with vaccination does not demonstrate Table onset. Respondent's Brief, filed Mar. 7, 2024, at *5 (ECF No. 29) ("Br."). Respondent emphasizes that Petitioner's first treatment was almost three weeks after vaccination, at which point she "vaguely" described the onset of her symptoms as pain that started after vaccination. Br. at *5. And nowhere do the medical records state that her pain began within 48 hours of vaccination. *Id.* Respondent takes

issue with Petitioner's citation of *Williams*, noting that the special master in that case relied in part on the deposition of the petitioner's PCP, who understood Petitioner to have reported immediate onset. Br. at *6

### C. Factual Findings on Onset

The record establishes that it is more likely than not that Petitioner's left shoulder pain began within 48 hours of vaccination.

Petitioner sought care for shoulder pain only 20 days after vaccination. This timing does not inherently raise questions about whether Petitioner's shoulder pain began long after vaccination. It is common for SIRVA petitioners to delay seeking care for this length of time – or *much longer* – because they expect the pain to go away on its own. *See Shiver v. Sec'y of Health & Human Servs.*, No. 21-1961V, 2024 WL 4544185, at *11 (Fed. Cl. Spec. Mstr. Sept. 16, 2024) (finding evidence preponderantly established that onset of shoulder pain occurred within 48 hours of vaccination where the petitioner first sought care just two weeks after vaccination); *Amor v. Sec'y of Health & Human Servs.*, No. 20-0978V, 2024 WL 1071877, at *6 (Fed. Cl. Spec. Mstr. Feb. 8, 2024) (noting that it is "common for petitioners in SIRVA cases to delay seeking care for weeks, or even months, in hopes that the pain will resolve without treatment" and finding onset was within 48 hours when Petitioner first sought care 23 days after vaccination); *Diaz v. Sec'y of Health & Human Servs.*, No. 20-1003V, 2023 WL 8440873, at *8 (Fed. Cl. Spec. Mstr. Nov. 1, 2023) (finding onset occurred on day of vaccination even though the petitioner did not seek treatment until over three months later).

Contrary to Respondent's suggestion, there is no requirement that a medical record state that a petitioner's pain began specifically within 48 hours in order for a claimant to succeed on a SIRVA Table claim. Instead, the standard for resolving factual questions such as the onset of pain is whether the petitioner has demonstrated the disputed fact by a preponderance of the evidence. Vaccine Act § 13(a)(1); *Roberson v. Sec'y of Health & Human Servs.*, No. 21-2309V, 2025 WL 605724 (Fed. Cl. Spec. Mstr. Jan. 24, 2025) (stating that the "absence of a specific date" of onset in medical records is not "compelling or particularly meaningful," and finding onset within 48 hours where the petitioner sought care 23 days after vaccination and reported pain for two to three weeks at the time of vaccination).

Medical record evidence expressly stating that a claimant's pain began within 48 hours of vaccination would, of course, be strong evidence in favor of such a finding. But that is not *the only way* that a claimant can succeed in meeting the onset element. In a case such as this one, where the medical records do not specify a precise onset date, a petitioner may nonetheless establish by preponderant evidence that pain began within 48 hours of vaccination. In such cases, I review the medical records for evidence that supports – or calls into question – whether pain began within that timeframe, and review testimonial and other evidence to see if it corroborates – or contradicts – the medical

7

records. In this case, the medical record evidence, corroborated by testimonial evidence, leads to the conclusion that, more likely than not, Petitioner's shoulder pain began within 48 hours of vaccination.

### D. Factual Findings on Remaining SIRVA QAI Criteria and Statutory Requirements

The remaining QAI and statutory requirements are not disputed, and I find that they are satisfied. The record does not contain preponderant evidence that Petitioner had a history of left shoulder pain, or any other condition that would explain her post-vaccination symptoms. Exs. 2, 3. She exhibited reduced ROM, and her pain and ROM limitations were limited to the vaccinated shoulder. Ex. 3 at 35, 44; Ex. 5 at 4, 6, 7. She received a covered vaccine in the United States. Ex. 1. She experienced residual effects of her injury for more than six months. Ex. 5 at 7. And she states that she has never received an award or settlement for her vaccine-related injury or filed a civil action. Ex. 6 at ¶ 6.

I find that Petitioner has established by a preponderance of the evidence that all Table SIRVA and QAI requirements are established. Further, she has established all statutory requirements for entitlement. Thus, Petitioner is entitled to compensation.

## III. Damages

### A. Legal Standard

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Section I-II of *Timberlake v. Sec'y of Health & Human Servs.*, No. 20-1905V, 2025 WL 721730 (Fed. Cl. Spec. Mstr. Feb. 19, 2025).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[5]

---

[5] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir.

8

### B. Parties' Damages Arguments

Petitioner requests a pain and suffering award of $68,000.00. Mot. at *11. She relies on my decisions in *Russo*, *Johnson*, *Dagen*, and *T.E.*[6] *Id.* at 9-11. Her injury persisted for seven months, during which time she saw her PCP twice, went to an orthopedist three times, and had one cortisone injection. *Id.* at *11. She argues that her case is similar to *T.E.*, *Johnson*, and *Dagen* in that she treated with an orthopedic surgeon. *Id.* Petitioner also had one steroid injection, while the *Russo* petitioner "only had conservative treatment," presumably meaning no steroid injections. *Id.* And she treated for six months, a similar timeframe to the petitioners in *T.E.* and *Johnson*. *Id.*

Respondent proposes an award of no more than $25,000.00 for what he characterizes as a "mild and limited in duration" injury. Br. at *6. Petitioner's injury was treated conservatively over a period of seven months with one prescription medication and one cortisone injection. *Id.* at *8. Although a home exercise program was prescribed, Respondent views it as "impossible to say whether and to what degree she utilized the program" because this was not monitored. *Id.* at *8 n.2.

Respondent explains that his position on damages in this case "necessarily factors in the deficiencies in the evidence that prevented respondent from conceding entitlement." Br. at *11. As such, Respondent views Petitioner's cited cases as "not comparable" because in those cases, entitlement to compensation had already been determined. *Id.* at *9. Indeed, Respondent asserts that "[n]o damages decision in which entitlement to compensation has already been decided can be truly comparable to this case given the lack of proof relevant to entitlement" outlined in Respondent's papers. *Id.* at *11.

Respondent nonetheless cites *Mejias* as a "more comparable" case than the cases Petitioner cites.[7] Br. at *11. Respondent asserts that *Mejias* is "instructive as a mild SIRVA that is yet more severe than petitioner's case," justifying a lower award in this case. *Id.* Respondent adds that *Russo* is not comparable in that it involved a slightly longer duration (eight months) with mild to moderate symptoms, the *Russo* petitioner required more treatment, and her symptoms impacted her quality of life and persisted beyond treatment.

---

1995)).

[6] *Russo v. Sec'y of Health & Human Servs.*, No. 20-1491V, 2022 WL 4717927 (Fed. Cl. Spec. Mstr. Aug. 31, 2022) (awarding $63,000.00 in pain and suffering); *Johnson v. Sec'y of Health & Human Servs.*, No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021) (awarding $65,000.00 in pain and suffering); *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (awarding $65,000.00 in pain and suffering); and *T.E. v. Sec'y of Health & Human Servs.*, No. 19-0633V, 2021 WL 2935751 (Fed. Cl. Spec. Mstr. May 7, 2021) (awarding $70,000.00 in pain and suffering).

[7] *Mejias v. Sec'y of Health & Human Servs.*, No. 19-1944V, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Nov. 10, 2021) (awarding $45,000.00 in pain and suffering).

*Id.* at *9. *Johnson* involves a petitioner who sought treatment just two days after vaccination – suggesting more severe pain – and who also underwent formal PT. *Id.* at *9-10. The *Dagen* petitioner attended 13 PT sessions, and her pain was initially "fairly significant" at ten out of ten, though her SIRVA was noted as "less severe." *Id.* at *10. And the *T.E.* petitioner also attended formal PT (seven sessions). *Id.*

On reply, Petitioner asserts that Respondent has not cited *any* reasoned decisions that support his proposed award of $25,000.00. Petitioner's Reply, filed March 11, 2024, at *1 (ECF No. 30) ("Reply"). And the *Mejias* petitioner did not have any injections or PT, and had an eight month treatment gap. Reply at *2.

### C. Appropriate Compensation for Pain and Suffering

I understand Respondent's rationale for factoring perceived evidentiary deficiencies into his damages position, given the posture of this case. However, the resulting damages analysis tends to be less helpful. Now that I have determined that Petitioner *has indeed* shown entitlement to compensation, Petitioner is entitled to compensation. Weaknesses in evidence that result in Respondent objecting to compensation *may* also be relevant to damages – for instance, a lengthy delay in seeking treatment may impact both Respondent's willingness to concede entitlement *and* the pain and suffering award, in that it could suggest a less severe injury. But the evidentiary concerns raised by Respondent in this case do not, in my view, bear in any meaningful way on the factors relevant to damages. In future cases where the parties are directed to brief both entitlement and damages together, I encourage Respondent to propose the damages he believes would be appropriate *if I were to find that Petitioner is entitled to compensation*.

This case involves a mild SIRVA that was treated conservatively and resolved in about seven months. Petitioner had moderate pain levels initially, but a steroid injection less than three months after vaccination provided significant pain relief. Her ROM restrictions were not severe, and she did not undergo formal PT.

*Mejias* – the only case Respondent cites – is not a good comparable. Although the petitioner in that case had a slightly longer injury duration, he also had a lengthy treatment gap of eight months, with intervening care for other issues – suggesting that he experienced a long period of relief.

Rather, this case is most similar to *Dagen*. The *Dagen* petitioner first sought care 15 days after vaccination, compared to 20 days in this case. Both petitioners' injuries resolved in approximately seven months, and both petitioners underwent one steroid injection. However, the *Dagen* petitioner also attended two rounds of PT totaling 14 sessions, while Ms. Kelly did not do any formal PT. I find that an award of $55,000.00 in actual pain and suffering is an appropriate award in this case.

10

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I GRANT Petitioner's motion for a ruling on the record, and find that Petitioner suffered an injury that meets the definition for a Table SIRVA and is entitled to compensation. I award Petitioner a lump sum payment of $55,000.00, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.